IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RYAN PAGE, | ) | |
| | ) | Case No. 5:23-cv-01970 |
| Plaintiff, | ) | |
| | ) | Judge Dan Aaron Polster |
| v. | ) | |
| | ) | OPINION & ORDER |
| GAMESTOP CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant, GameStop Corporation's ("GameStop"), motion to dismiss and compel arbitration.  ECF Doc. 10.  This putative class action case concerns GameStop's purportedly deceptive practice of advertising "free shipping" to online customers who meet a minimum spending requirement, and then adding a shipping and handling charge shortly before they finalize their purchase.  ECF Doc. 1.  Plaintiff, Ryan Page ("Mr. Page"), maintains he was a GameStop customer who qualified for free shipping but nonetheless had to pay a shipping and handling fee for his online purchase.  *Id.*  Defendant moves to compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 2-4 and dismiss Plaintiff's claims.  ECF Doc. 10.  For the following reasons, the Court <u>GRANTS</u> Defendant's motion and <u>DISMISSES WITHOUT PREJUDICE</u> this case.

Background

Plaintiff's relationship with GameStop began in May 2016, when he enrolled in the GameStop PowerUp Rewards Program.  ECF Doc. 10-2, ¶ 13, PageID# 81.  In June 2023, the PowerUp Rewards Program changed its name to the GameStop Pro Program ("Pro Program").

1

*Id.* at ¶ 4, PageID# 79.  The Pro Program is a "members-only program" [1] that requires customers to affirmatively enroll and pay an annual fee to receive its benefits, special discounts, and "exclusive deals and products."  *Id.*  Customers who do not renew their yearly membership and pay the annual enrollment fee lose access to the Pro Program.  *Id.* at ¶ 6, PageID# 80.  Plaintiff purchased one-year memberships to the Pro Program or its predecessor in May 2016, March 2019, February 2020, April 2021, and August 2023.  *Id.* at ¶¶ 13-16, 20, PageID# 81- 82.

### Plaintiff's GameStop Purchases on August 27, 2023

On August 27, 2023, Mr. Page made two separate transactions for GameStop services and/or products that are relevant to this case.  The first transaction[2] occurred at a GameStop store, where, at approximately 12:45 pm, Mr. Page renewed his Pro Program membership in-person.  ECF Doc. 10-2, ¶¶ 20-21, PageID# 82.  Generally, enrolling in the Pro Program requires customers to first agree to the GameStop Pro Terms & Conditions ("Pro Terms & Conditions").  *Id.* at ¶ 5, PageID# 80.  GameStop's Vice President for Technology describes in his declaration (ECF Doc. 10-2, PageID## 79-83) the specific process for purchasing a Pro Program membership in-store.  *Id.* at ¶ 11, PageID# 80.  He states that "the only way a customer could purchase a Pro membership in-person was to first agree to the Pro Terms & Conditions by clicking 'I Agree' on the point-of-sale pin pad while being presented with the [below] message."  *Id.*

> By clicking 'I Agree' you agree to be bound by the GameStop Pro Program Terms & Conditions, which will be sent to you by email or are available in hard copy from any associate.  You also agree that we may contact you by email to

---

[1] "GameStop offers its customers a members-only program called the Pro Program.  In exchange for an annual fee, which is currently $25, Pro members receive a monthly five-dollar reward, 10% extra trade-in credits, 5% off the purchase of certain categories of products (including clearance items and collectibles), and other exclusive deals and products only available to Pro members."  ECF Doc. 10-2, ¶ 3, PageID# 79.

[2] Plaintiff does not mention this first transaction in his complaint (ECF Doc. 1), but he does not dispute that it occurred in his response in opposition (ECF Doc. 15).

2

>provide important information about your Membership, including renewal reminders and opportunities or content that might interest you.

*Id.* Underneath the message, the pin pad screen also displays two boxes: a bright green "I agree" box on the left side, and a bright blue "I Don't Agree" box on the right side. ECF Doc. 16-1, PageID# 210. Purchasing a Pro Program membership requires the customer to choose the green "I agree" box. ECF Doc. 10-2, ¶ 11, PageID# 80.

Plaintiff avers in his declaration that "[n]o sales associate at GameStop has ever provided [him] a hard copy of GameStop's Pro Terms on any occasion." ECF Doc. 17, PageID# 221. Mr. Page's declaration does not address whether he received any GameStop emails containing the Pro Terms & Conditions. *Id.* It appears that on August 28, 2023, and August 30, 2023, GameStop sent Mr. Page two Welcome Emails. ECF Doc. 16-2, PageID# 211-12. Both emails contained clickable links to GameStop's Pro Terms & Conditions at the very bottom of the page. *Id.*

Plaintiff's second transaction occurred later that same day, when he made an online purchase from GameStop's website. ECF Doc. 10-2, ¶ 23, PageID# 82. Mr. Page alleges in his complaint that GameStop's website advertised "FREE Shipping Over $79." ECF Doc. 1, ¶ 17, PageID# 4. Mr. Page spent $131.08 on GameStop products and believed he qualified for free shipping and handling. *Id.* at ¶ 16. Yet, before he finalized his online purchase, the order summary reflected a $7.99 charge for "Shipping & Handling." *Id.* at ¶ 18, PageID# 4-5. Plaintiff completed the purchase and paid the "Shipping & Handling" charge. *Id.* Shortly thereafter, Plaintiff contacted GameStop about the shipping charge and received a message from a GameStop representative, who explained that GameStop "charged $7.99 for the handling but not the shipping." *Id.* at ¶ 19, PageID# 5-6.

Defendant asserts—and Plaintiff does not dispute—that Mr. Page used his Pro Program account to make the second transaction on August 27, 2023. ECF Doc. 10-2, ¶ 23, PageID# 82. Specifically, Plaintiff's $5.00 GameStop Online Reward and Clearance Savings of $28.85 stem from his status as a Pro Program member. ECF Doc. 1, Order Summary screenshot, PageID# 5; ECF Doc. 10-2, ¶ 23, PageID# 82.

### Plaintiff's GameStop Purchases *after* August 27, 2023

Similarly, Defendant asserts—and Plaintiff does not dispute—that he used his Pro Program membership to make GameStop purchases on November 14, 2023, November 17, 2023, and December 22, 2023. ECF Doc. 10-2, ¶¶ 24-26, PageID# 82-83. On these three occasions, Mr. Page received an extra 5% discount because of his status as a Pro Program member. *Id.*

### Pro Terms & Conditions' Mandatory Arbitration Provision

Beginning in January 2020, the Pro Terms & Conditions included a mandatory arbitration clause. ECF Doc. 10-2, ¶ 7, PageID# 80; Ex. A, PageID# 85. The Pro Terms & Conditions dated June 27, 2023 (ECF Doc. 10-2, Ex. B, PageID# 92-101), are a ten-page document that contain a mandatory arbitration provision, "governed by federal law and the Federal Arbitration Act as to arbitration issues and the law of the State of Texas for all other issues," as well as a jury trial waiver and a class action waiver. ECF Doc. 10-2, Ex. B, PageID# 92, 96-97. The June 2023 Pro Terms & Conditions were in effect on August 27, 2023, when Plaintiff made the two purchases for GameStop services and/or products. *Id.* at ¶ 8, PageID # 80.

The mandatory arbitration provision appears in two places in the June 2023 Pro Terms & Conditions. It first appears in the top half of page one, in bold, all-capital text. ECF Doc. 10-2, Ex. B, PageID# 92. It reads:

> **THESE TERMS CONTAIN A MANDATORY ARBITRATION AND CLASS ACTION WAIVER PROVISION THAT, AS FURTHER SET**

4

**FORTH IN THE "DISPUTE RESOLUTION" SECTION BELOW, REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES RATHER THAN JURY TRIALS OR ANY OTHER COURT PROCEEDINGS OR CLASS ACTIONS OF ANY KIND**.

*Id.* The second provision appears under the "Dispute Resolution" section on pages five and six, again in bold, all-capital text. *Id.* at PageID# 96-97. It reads:

> **MANDATORY ARBITRATION AND CLASS ACTION WAIVER - PLEASE READ THIS SECTION CAREFULLY - IT AFFECTS YOUR LEGAL RIGHTS AND GOVERNS HOW YOU AND GAMESTOP CAN BRING CLAIMS AGAINST EACH OTHER. THIS SECTION WILL, WITH LIMITED EXCEPTION, REQUIRE YOU AND GAMESTOP TO SUBMIT CLAIMS AGAINST EACH OTHER TO BINDING AND FINAL ARBITRATION ON AN INDIVIDUAL BASIS. THIS MEANS THAT YOU WILL NOT BE ABLE TO BRING A CLASS, COLLECTIVE, OR REPRESENTATIVE LAWSUIT IN A COURT OF LAW BEFORE A JUDGE OR JURY OR TO APPEAL DECISIONS CONCERNING ANY DISPUTE THAT MAY ARISE WHICH IS COVERED BY THE ARBITRATION AGREEMENT AND ARE INSTEAD AGREEING TO SUBMIT ANY SUCH DISPUTE SOLELY ON YOUR OWN BEHALF TO AN IMPARTIAL ARBITRATOR.**

*Id.*

### GameStop's Conditions of Use

There is a second GameStop contract that is relevant to Plaintiff's response in opposition to Defendant's motion: GameStop's Conditions of Use ("Conditions of Use"). ECF Doc. 16-4, PageID# 215-20. When Plaintiff completed his online purchase on August 27, 2023, the order summary contained a hyperlink to the Conditions of Use. ECF Doc. 16-3, PageID# 214. Immediately below the "Place Order" red button was a hyperlink in a sentence that read, "By tapping Place Order, you agree to GameStop's Privacy Policy and Conditions of Use."

The Conditions of Use are a six-page document that govern select GameStop websites, mobile applications, and other platforms. ECF Doc. 16-4, PageID# 215-20. Specifically,

> These Conditions of Use apply to www.gamestop.com, the GameStop App - iOS and Android versions, and all other sites, services, applications, platforms and tools where

5

these Conditions of Use appear or are linked (collectively, the "Sites"). These Conditions of Use do not apply to other GameStop websites or mobile applications, such as Game Informer (www.gameinformer.com), GameStop NFT Marketplace (nft.gamestop.com) or GameStop Wallet (wallet.gamestop.com and the GameStop Wallet App (browser extension and iOS versions)), each of which has its own Conditions of Use, Terms and Conditions, Terms of Service or the like, respectively.

*Id.* at 215. Unlike the Pro Terms & Conditions, the Conditions of Use do not contain a mandatory arbitration provision, jury trial waiver, or class action waiver. *Id.* at PageID# 215-20. And instead of a Texas choice of law provision, the laws of a consumer's state "without regard to principles of conflict of laws, will govern these Conditions of Use and any dispute of any sort that might arise." *Id.* at PageID# 215.

## Procedural History

Plaintiff filed this class action complaint on October 9, 2023. ECF Doc. 1. Mr. Page alleges that GameStop's bait-and-switch tactic of advertising free shipping and then adding a shipping and handling charge shortly before completing the online checkout violated: the Ohio Consumer Sales Practices Act, Ohio Revised Code (R.C.) § 1345.02 *et seq.* (on behalf of the nationwide class and Ohio subclass) (Count 1); Certain state consumer protection laws where class members reside, where those state laws do not materially conflict with the Ohio Consumer Sales Practice Act (on behalf of the consumer protection law subclass) (Count 2); and constituted Unjust Enrichment (on behalf of Plaintiff, the nationwide class, and Ohio subclass) (Count 3). *Id.*

On November 17, 2023, Defendant filed and the Court granted Defendant's unopposed motion to stay the proceedings pending resolution of a forthcoming motion to compel arbitration. ECF Docs. 5, 8. On January 4, 2024, GameStop filed a motion to dismiss and compel arbitration (ECF Doc. 10). On January 15, 2024, GameStop filed—at the Court's direction—a
6

supplemental brief[3] in support of its motion, where it addressed which party would pay for arbitration under the Pro Terms & Conditions. ECF Doc. 13; Non-doc. Order dated 01/09/2024. Plaintiff filed his response in opposition to Defendant's motion to dismiss and compel arbitration on March 6, 2024. ECF Doc. 15. Defendant filed its reply on April 5, 2024. ECF Doc. 19.

GameStop seeks to compel arbitration and dismiss the case because: (1) "GameStop and Page contracted to arbitrate any and all disputes between them;" (2) "the arbitration clause in the Pro Terms covers this dispute;" and (3) dismissal is proper because the contract provides for final and binding arbitration of disputes. ECF Doc. 10-1, PageID# 69, 75- 76.

Plaintiff contends that (1) GameStop failed to prove that an enforceable agreement to arbitrate exists; and (2) GameStop's Conditions of Use—not GameStop's Pro Terms & Conditions—apply to Plaintiff's purchase. ECF Doc. 15, PageID# 193, 201. Specifically, Mr. Page asserts that "no binding agreement to arbitrate exists between the parties" because he was "unaware of GameStop's arbitration provision," given GameStop's "inadequate notice" "in its emails, in-store pin pad, and on its website." *Id.* at PageID# 195. Plaintiff maintains that he lacked both actual notice[4] and inquiry notice. *Id.* Additionally, Plaintiff argues that the sentence on page two of the Pro Terms & Conditions[5] further corroborates his position that the Conditions of Use govern the present dispute. *Id.* at PageID# 193. In its reply, GameStop maintains that Mr. Page "manifested his assent" to the Pro Terms & Conditions in numerous ways and "is

---

[3] GameStop certified that it will pay the cost of the arbitration, and the parties use the AAA Rules. ECF Doc. 13.

[4] Paragraphs five and six of Plaintiff's declaration (ECF Doc. 17), dated March 5, 2024, state:

> 5. I have never been aware of the arbitration provision in GameStop's Pro Terms.
> 6. I have never agreed, and I do not agree to arbitrate my claims with GameStop. I declare under penalty of perjury that the foregoing is true and correct.

[5] "Transactions completed on www.GameStop.com or the GameStop App are subject to the Conditions of Use found at https://www.gamestop.com/disclaimer.html." ECF Doc. 10-2, Ex. B., PageID# 93.

7

bound by all of the Pro Terms and Conditions, not just the ones that benefit him." ECF Doc. 19, PageID# 227, 232.

Standard

"Generally, when asked to compel arbitration under a contract, a court determines whether the parties agreed to arbitrate their dispute." *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). "[O]rdinary state-law principles that govern the formation of contracts" guide the Court's analysis in deciding whether an arbitration provision is valid. *Sevier Cty. Sch. Fed. Credit Union v. Branch Banking & Tr. Co.*, 990 F.3d 470, 475 (6th Cir. 2021) (quoting *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005)).

GameStop, "as the movant asserting the existence of a contract, must initially carry its burden to produce evidence that would allow a reasonable jury to find that a contract exists." *Chaudhri v. StockX, LLC (In re StockX Customer Data Sec. Breach Litig.)*, 19 F.4th 873, 881 (6th Cir. 2021) (citing *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 417 (6th Cir. 2011); Fed. R. Civ. P. 56(a), (e)). Next, Mr. Page must " 'cit[e] to particular . . . materials in the record,' *see* Fed. R. Civ. P. 56(c), to show that there is a genuine dispute of material fact that could 'lead a rational trier of fact to find' that a contract does not exist." *Id.* at 882 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

The Court considers the materials that both parties attached as exhibits and cited to in their respective motion to dismiss, response in opposition, and reply. Fed. R. Civ. P. 56(c)(1)(A). Finally, the Court construes the evidence and draws all reasonable inferences in favor of Mr. Page, as the non-moving party. *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 864 (6th Cir. 2020) (quoting *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2018)).

Analysis

For the following reasons, the Court grants GameStop's motion to dismiss and compel arbitration.

First, the Pro Terms & Conditions govern Plaintiff's claims over GameStop's shipping & handling charge. It is undisputed that Plaintiff used his Pro Program account and membership to effectuate the online purchase on August 27, 2023, which contained the questionable shipping and handling fee. Additionally, Plaintiff does not contest the fact that he received two monetary benefits through his Pro Program membership in this transaction: (1) the $5.00 GameStop Online Reward; and (2) Clearance Savings of $28.85. Because Mr. Page "access[ed], join[ed], or us[ed] the Program" to make his online GameStop purchase on August 27, 2023, the Pro Terms & Conditions "govern [his] participation and use of the Program," including his claims in this case. ECF Doc. 10-2, Ex. B, PageID# 92 ("Please read these Terms and the Privacy Policy carefully because they govern your participation and use of the Program. You ('You' or 'Member') acknowledge and agree that by *accessing*, *joining*, or *using* the Program you have read, understand, and agree (a) to be bound by these Terms.") (emphasis added).

Second, whether the Court applies Ohio or Texas law, GameStop has met its initial burden of producing evidence that a contract exists between the parties. The contract in this case—the Pro Terms & Conditions—is known as a "clickwrap" agreement as it "require[s] the user to manifest assent to the terms by clicking on an icon." *Traton News, LLC v. Traton Corp.*, 528 F. App'x 525, 526 n.1 (6th Cir. 2013). "Ohio courts have held that clicking a 'clickwrap agreement' is an acceptable method to manifest assent to the terms of an agreement." *Clotz v. MobileHelp, LLC*, 2023 U.S. Dist. LEXIS 80384, at *9 (N.D. Ohio May 8, 2023) (quoting *Campinha-Bacote v. AT&T Corp.*, 2017-Ohio-5608, ¶ 13 (Ct. App.); *see also Tucker v. Santa*

9

*Barbara Tax Prods. Grp., LLC*, 2023 U.S. Dist. LEXIS 61353 at *10-11 (N.D. Ohio Apr. 5, 2023) (collecting cases)). Texas courts have similarly "recognize[d] the validity of clickwrap agreements." *Clotz*, 2023 U.S. Dist. LEXIS 80384, at *10 (citing *Johnson v. Sw. Recovery Servs. Inc.*, 2023 U.S. Dist. LEXIS 23784 at *17 (N.D. Tex. Jan. 23, 2023) (collecting cases)). Plaintiff selected the green "I agree" box "via the pin pad on the GameStop point-of-sale system, to the Pro Terms & Conditions at or around 12:45 on August 27, 2023." ECF Doc. 10-2, ¶ 21, PageID# 82.

Third, Mr. Page fails to "present 'specific facts, as opposed to general allegations,' that would allow a rational trier of fact to find that" a contract does not exist. *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 839 (6th Cir. 2021) (quoting *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020)). Plaintiff's primary evidence is his declaration, where he avers that he has "never been aware of the arbitration provision in GameStop's Pro Terms" and that he has "never agreed, and [does not] agree to arbitrate [his] claims with GameStop." ECF Doc. 17, PageID# 221. Yet, Mr. Page's actions indicate otherwise.

Plaintiff manifested assent to the Pro Terms & Conditions through his acts and conduct. *See Martin v. Friedberg*, 2007-Ohio-3932, ¶ 19 (Ct. App.) ("A party can manifest his assent to a contract by written or spoken words, by his actions, or his failure to act.") (citation omitted); *Foster v. Nat'l Collegiate Student Loan Tr. 2007-4*, 2018 Tex. App. LEXIS 1606, at *22 (Tex. App. Mar. 1, 2018) ("If one party signs a contract, the other party may accept by his acts, conduct, or acquiescence to the terms, making it binding on both parties.") (citing *Jones v. Citibank (S.D.), N.A.*, 235 S.W.3d 333, 339 (Tex. App.—Fort Worth, no pet.)).

Specifically, as of November 17, 2023—when Defendant filed an unopposed motion to stay the proceedings pending resolution of a forthcoming motion to compel arbitration—Mr.

Page was on notice of GameStop's intent to enforce the mandatory arbitration provision in the Pro Terms & Conditions. ECF Doc. 5. Yet, on December 22, 2023, Plaintiff again used his Pro Program membership to buy more GameStop merchandise, where he "received an extra 5% discount off the purchase of 'collectibles'—one of the benefits of the Pro program." ECF Doc. 10-2, ¶ 26, PageID# 83. Plaintiff's December 2023 GameStop purchase with his Pro Program membership and account is inconsistent with any effort to disavow the Pro Terms & Conditions contract. In other words, a rational trier of fact would find that Mr. Page manifested his assent to the Pro Terms & Conditions by intentionally availing himself to the membership rewards and benefits and performing under the contract, even after he learned of the mandatory arbitration provision. *See TLG Elecs., Inc. v. Newcome Corp.*, 2002-Ohio-882 (Ct. App.) ("Conduct sufficient to show agreement, including performance, is a reasonable mode of acceptance.") (quoting *Cent. Trans., Inc. v. Cleveland Metallurgical Supply Co.*, 1993 Ohio App. LEXIS 3513, at *7 (Ct. App. July 15, 1993)).

Plaintiff's argument that he did not read the Pro Terms & Conditions and, therefore, could not assent is unpersuasive. "When an individual signs a contract, that individual is presumed to have knowledge of its contents." *Smith v. BT Conferencing, Inc.*, 2013 U.S. Dist. LEXIS 158362, at *13 (S.D. Ohio Nov. 5, 2013) (citing *Brubaker v. Barrett*, 801 F. Supp. 2d 743, 751 (E.D. Tenn. 2011)). Moreover, "a party is bound by a contract even if he or she did not read its contents." *Heiges v. JP Morgan Chase Bank, N.A.*, 521 F. Supp.2d 641, 648 (N.D. Ohio 2007) (citing *Upton, Assignee v. Tribilcock*, 91 U.S. 45, 50, 23 L. Ed. 203 (1875)).

Fourth, through his conduct, Mr. Page "is estopped from denying that the parties had a meeting of the minds sufficient to bind them to the contract." *Smith*, 2013 U.S. Dist. LEXIS 158362, at *14 (citing *Heiges v. JP Morgan Chase Bank, N.A.*, 521 F. Supp.2d at 648); *see also*

11

*Brubaker v. Barrett*, 801 F. Supp. 2d at 757 ("when a party who has not signed a contract has nonetheless manifested consent by performing under it and making payments conforming to its terms, that party is estopped from denying that the parties had a meeting of the minds sufficient to bind them to the contract") (internal quotations and citation omitted). Plaintiff cannot on one hand reap the rewards, discounts, and benefits afforded to him through the Pro Terms & Conditions, and on the other hand, self-servingly reject one specific provision of the contract. A rational trier of fact would find that Plaintiff's continued use of his Pro Program account reflects his desire to be bound by the agreement, not to renounce it. Accordingly, the Court finds that Mr. Page, through his conduct, assented to the Pro Terms & Conditions, including the mandatory arbitration provision.

## Conclusion

The Court concludes that that a valid contract exists between Plaintiff and GameStop. Mr. Page, through his conduct, assented to the Pro Terms & Conditions, including the mandatory arbitration provision. Accordingly, the Court <u>GRANTS</u> Defendant's motion and <u>DISMISSES WITHOUT PREJUDICE</u> this case.

IT IS SO ORDERED.

Date: April 16, 2024

                                           <u>*/s/ Dan Aaron Polster*</u>
                                           Dan Aaron Polster
                                           United States District Judge